**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**AMANDA WEBB,**
o/b/o **K.S.**,

                                **Plaintiff,**                **1:13-cv-737
(GLS)**

                    v.

**CAROLYN W. COLVIN,**
Acting Commissioner, Social
Security Administration,

                                **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Empire Justice Center | LOUISE MARIE TARANTINO, |
| 119 Washington Avenue | ESQ. |
| 2nd Floor | |
| Albany, NY 12210 | |
| | |
| **FOR THE DEFENDANT:** | |
| HON. RICHARD S. HARTUNIAN | TOMASINA DIGRIGOLI |
| United States Attorney | Special Assistant U.S. Attorney |
| 100 South Clinton Street | |
| Syracuse, NY 13261 | |
| | |
| Steven P. Conte | |
| Regional Chief Counsel | |
| Social Security Administration | |
| Office of General Counsel, Region II | |
| 26 Federal Plaza, Room 3904 | |
| New York, NY 10278 | |

**Gary L. Sharpe
Chief Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Amanda Webb o/b/o K.S. challenges the Commissioner of Social Security's denial of Supplemental Security Income (SSI), seeking judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl., Dkt. No. 1.) After reviewing the administrative record and carefully considering Webb's arguments, the court affirms the Commissioner's decision and dismisses the complaint.

## II. Background

On May 25, 2010, Webb filed an application for SSI under the Social Security Act ("the Act") on behalf of her son, a minor, alleging disability since October 10, 2008. (Tr.[1] at 80, 119-22.) After her application was denied, (*id.* at 81-84), Webb requested a hearing before an Administrative Law Judge (ALJ), which was held on November 16, 2011, (*id.* at 43-79, 85-87). On February 24, 2012, the ALJ issued an unfavorable decision denying the requested benefits which became the Commissioner's final determination upon the Social Security Administration Appeals Council's

---

[1] Page references preceded by "Tr." are to the Administrative Transcript. (Dkt. No. 9.)

denial of review. (*Id.* at 1-6, 15-42.)

Webb commenced the present action by filing her complaint on June 24, 2013 wherein she sought review of the Commissioner's determination. (Compl.) The Commissioner filed an answer and a certified copy of the administrative transcript. (Dkt. Nos. 7, 9.) Each party, seeking judgment on the pleadings, filed a brief. (Dkt. Nos. 13, 21.)

### III. Contentions

Webb contends that the Commissioner's decision is tainted by legal error and is not supported by substantial evidence. (Dkt. No. 13 at 19-25.) Specifically, Webb claims that the ALJ erred in finding that K.S.'s impairments are not functionally equivalent to a listed impairment. (*Id.*) The Commissioner counters that the appropriate legal standards were used by the ALJ and his decision is also supported by substantial evidence. (Dkt. No. 21 at 5-12.)

### IV. Facts

The court adopts the parties' undisputed factual recitations. (Dkt. No. 13 at 2-18; Dkt. No. 21 at 2.)

### V. Standard of Review

The standard for reviewing the Commissioner's final decision under

3

42 U.S.C. § 1383(c)(3) is well established and will not be repeated here. For a full discussion of the standard of review, the court refers the parties to its previous opinion in *Christiana v. Comm'r of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008). Similarly, for a full discussion of the three-step analysis used by the Social Security Administration to determine whether individuals under the age of eighteen are disabled, the court refers the parties to its previous opinion in *Shatraw ex rel. K.C.Y., III, v. Astrue*, 7:11-cv-13, 2012 WL 589667, at *1 (N.D.N.Y. Feb. 22, 2012).

## VI.  Discussion

### A.  Functional Equivalency

Where a severe impairment or combination of impairments exists, the final inquiry is whether the child's impairment or combination of impairments "meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a).  A finding of functional equivalence requires "marked" limitations in two, or an "extreme" limitation[2] in one, of the following six "domains": "(i) [a]cquiring and using information; (ii) [a]ttending

---

[2] A "marked" limitation is one that "interferes seriously" with the claimant's "ability to independently initiate, sustain, or complete activities" within the given domain, while an "extreme" limitation "interferes very seriously" with those abilities.  20 C.F.R. § 416.926a(e)(2)(i), (3)(i).

4

and completing tasks; (iii) [i]nteracting and relating with others; (iv) [m]oving about and manipulating objects; (v) [c]aring for yourself; and (vi) [h]ealth and physical well-being." *Id.* § 416.926a(a), (b)(1)(i)-(vi). Here, the ALJ found that K.S. suffers, among other things, attention deficit disorder, mood disorder, and dysmorphic features which cause no limitation in the domain moving about and manipulating objects and "less than marked" limitations in the remaining five domains. (Tr. at 24-36.) Webb contends that the ALJ erred in finding that K.S. does not have marked limitations in the domains of attending and completing tasks and interacting and relating with others. (Dkt. No. 13 at 19-25.) As the Commissioner argues, however, the ALJ's functional equivalency analysis is supported by substantial evidence,[3] and, thus, it will not be disturbed. (Dkt. No. 21 at 5-12.)

  1. *Attending and Completing Tasks*

This domain contemplates a child's ability to focus and maintain attention, "begin, carry through, and finish . . . activities, including the pace at which [the child] perform[s] activities and the ease with which [he] change[s] them." 20 C.F.R. § 416.926a(h). School-age children should be

---

[3] "Substantial evidence is defined as more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) (internal quotation marks and citations omitted).

able to focus "attention in a variety of situations in order to follow directions, remember and organize . . . school materials, and complete classroom and homework assignments." *Id*. § 416.926a(h)(2)(iv). Children of K.S.'s age should also "be able to concentrate on details and not make careless mistakes," change "activities or routines without distract[ion,] stay on task and in place when appropriate," and "complete a transition task . . . without extra reminders and accommodation." *Id.*

The ALJ concluded that K.S. has a less than marked limitation in this domain because, although he is distracted by his peers, he works well independently, teachers Tammy Seres and Karen Harris noted no serious problems in this domain, and the medical evidence indicates that K.S. was at least partially responsive to treatment and had intact attention and concentration. (Tr. at 30.) Webb argues that this determination was in error because K.S. cannot complete tasks without adult support, has been prescribed numerous types and increasing dosages of medications to control his attention deficit hyperactivity disorder (ADHD), and teachers Kristen Nunziato and Andrea Hanna opined that K.S. suffers "serious" and "very serious" problems in this domain. (Dkt. No. 13 at 20-21.) Further, Webb argues that the ALJ committed legal error when he failed to discuss

the opinion of non-examining psychological consultant H. Ferrin, who opined that K.S. was markedly limited in this domain. (*Id.* at 23.)

Importantly, "whether there is substantial evidence supporting the appellant's view is not the question," instead, the court must "decide whether substantial evidence supports *the ALJ's decision.*" *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d. Cir. 2013). Here, as the ALJ pointed out, in September 2011, teacher Seres, who had provided K.S. special education instruction in math and reading for over one year, opined that K.S.'s problems in attending and completing tasks were less than serious. (Tr. at 358.) Thereafter, Harris, K.S.'s fifth grade home room, science, and social studies teacher, opined that, out of thirteen areas of this domain, K.S. suffers only obvious problems in completing work accurately without careless mistakes. (*Id.* at 366.) These are the most recent teacher questionnaires of record. (*See generally id.* at 127-373.) In addition, the ALJ considered the teacher questionnaire completed by K.S.'s third grade teachers, Nunziato and Hanna, but afforded it "little weight" because it was inconsistent with other statements attributed to Nunziato and Hanna in the record. (*Id.* at 26.) Specifically, although their teacher questionnaire indicates that K.S. suffers serious and very serious problems

7

in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for himself, Nunziato and Hanna reported to school psychologist Rebecca Blais that K.S. was doing well in the classroom, does his work with prompting and frequent refocusing, and academically does well with some support. (*Id.* at 163-67, 312.) In addition, Blais observed K.S. in his classroom and during testing, and reported that he worked well independently, but was easily distracted by his peers. (*Id.* at 312.) However, K.S. was attentive and focused in the one-on-one environment, was not fidgety or distracted, and worked well through all material presented to him. (*Id.* at 312-13.)

In May 2010, K.S. was evaluated by physician Anthony Malone and found to have an average fund of knowledge for his age, no difficulties in pragmatic language, an understanding of questions having to do with social empathy, and an understanding of joint attention appropriate for his age. (*Id.* at 444-45.) Subsequently, K.S. was examined by consulting examiner Thomas DePaola and found to have normal behavior for his age, including a normal attention span, and a normal manner of relating, although he exhibited "some mild hyperactivity." (*Id.* at 453-59.) During his consultative

examination by psychologist Annette Payne, K.S. exhibited impaired attention and concentration, which Payne opined would cause moderate difficulties in the areas of attending to, following, and understanding age-appropriate directions and completing age-appropriate tasks. (*Id.* at 463.) Based on the foregoing, the ALJ's conclusion that K.S. experiences deficits in the domain of attending and completing tasks, but that such deficits do not reach the marked level, is supported by substantial evidence. (*Id.* at 30.)

Webb argues that the ALJ committed legal error when he failed to explain the weight given to Ferrin, the non-examining psychological consultant.[4] (Dkt. No. 13 at 23.) Webb is correct in pointing out that, "[u]nless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to the . . . opinions from treating sources, non[-]treating sources, and other non[-]examining sources." 20 C.F.R. § 416.927(e)(2)(ii); (Dkt. No. 13 at 23.) Here, the ALJ's decision indicates that his findings were made "[a]fter careful consideration of the entire record." (Tr. at 21). The mere fact that the ALJ

---

[4] It should be noted that, because he found marked impairment in only one domain, (Tr. at 568-74), wholesale adoption of Dr. Ferrin's findings would also result in a finding that K.S.'s impairments fail to functionally equal a listing.

9

did not specifically mention Ferrin's opinion does not mean that the opinion was not considered or afforded the proper weight. *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d. Cir. 2012)*; Black v. Apfel,* 143 F.3d 383, 386 (8th Cir. 1998). Moreover, Webb is conspicuously silent as to what weight the ALJ should have afforded the remainder of Ferrin's opinion. The ALJ's decision makes clear that he gave greater weight to K.S.'s most recent teacher evaluations, completed after Ferrin's opinion was rendered, because it appears from the record that K.S.'s ADHD has been at least partially responsive to treatment. (Tr. at 30); *see* SSR 06-03p, 2006 WL 2329939, at *3, *6 (Aug. 9, 2006) (explaining that non-medical sources such as teachers often have personal knowledge and expertise to make judgments about a claimant's impairments, activities, and level of functioning over a period of time, and may, under certain circumstances, properly be determined to outweigh the opinion from a medical source). In light of the foregoing, the court declines to remand on this basis. *See Petrie v. Astrue*, 412 F. App'x 401, 407 (2d Cir. 2011) ("[W]here the evidence of record permits [the court] to glean the rationale of an ALJ's decision," it is not necessary that the ALJ "have mentioned every item of testimony presented to him or have explained why he considered

particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." (internal quotation marks and citation omitted)); *cf. Marine v. Barnhart*, No. 00 CV 9392, 2003 WL 22434094, at *3 (S.D.N.Y. Oct. 24, 2003) (rejecting a claimant's request for remand where the ALJ failed to specifically mention the opinion of a non-examining state physician because it was clear the ALJ considered the entire record, and the non-examining physician's opinion was entitled to little weight because it was inconsistent with the record as a whole).

2. *Interacting and Relating with Others*

This domain contemplates a claimant's ability to "initiate and sustain emotional connections with others, develop and use the language of [his] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Citing, among other things, a May 2009 behavioral assessment, the opinion of Seres, and the reports of Drs. Malone and Kerry Brand, the ALJ found K.S.'s limitation in this domain to be less than marked. (Tr. at 31-33.) Substantial evidence in the record supports this conclusion.

On an East Greenbush Central School District Psychoeducational

report, completed in May 2009, K.S.'s teacher and Webb completed behavioral assessment scales. (*Id.* at 508-18.) K.S.'s teacher reported that K.S. sometimes seemed sad and had difficulty with his peers, but her rating's indicated average scores on the atypicality, withdrawal, learning problems, and attention problems scale. (*Id.* at 515-16, 520.) Webb's ratings, on the other hand, indicated clinically significant scores in these areas. (*Id.*) The report concluded that such discrepancy may be partially attributed to K.S.'s use of medication during the school day. (*Id.* at 516.) In May 2010, as noted above, Dr. Malone found K.S. to have no difficulties in pragmatic language, an understanding of questions having to do with social empathy, and an understanding of joint attention appropriate for his age. (*Id.* at 444-45.) Dr. Malone opined that K.S. has fairly good school adjustments in place and his home adjustments are appropriate. (*Id.* at 445.)

In May 2011, K.S. was evaluated by psychologist Brand, who observed K.S. in school. (*Id.* at 662-68.) Dr. Brand noted that K.S. sat with friends at lunch, talking and laughing, had a full affect and appropriate eye contact, and appropriately joined in a basketball game during recess. (*Id.* at 666.) Dr. Brand consulted with K.S.'s school psychologist who indicated

that this behavior was typical of K.S., and reported that K.S. is generally well-liked, very appropriate in his socialization, seeks out attention from his peers, and is interested in making friends. (*Id.*)

In addition to the above evidence, on her teacher questionnaire, Seres indicated that out of thirteen areas in this domain, K.S. suffers a serious problem in one area, obvious problems in three areas, a slight problem in six areas, and no problems in three areas. (*Id.* at 359.) On the other hand, Harris opined that K.S. suffers no problems in this domain. (*Id.* at 367.) Thus, although teachers Nunziato and Hanna noted more serious problems in this domain, (*id.* at 165), the ALJ's decision that K.S. suffers less than marked limitation is supported by substantial evidence.

With respect to the opinion of Dr. Payne that K.S. has moderate to significant difficulty interacting with others and significant difficulty maintaining socially appropriate behavior, (*id.* at 463),although the ALJ failed to assign a specific weight to it, it is clear that the ALJ considered Dr. Payne's opinion, (*id.* at 27), but found it to be less persuasive than the above referenced evidence. Although Webb is correct in noting that Dr. Brand's Global Assessment of Functioning (GAF) score of sixty indicates moderate symptoms, this supports the ALJ's conclusion that K.S.'s

13

difficulties are less than marked. (Dkt. No. 13 at 25.)[5] Although the ALJ did not specifically discuss other GAF scores contained in the record, "an ALJ is not required to discuss every piece of evidence submitted." *Brault*, 683 F.3d at 448; *see Marvin v. Colvin*, No. 3:12-cv-1779, 2014 WL 1293509, at *2 (N.D.N.Y. Mar. 31 2014). Indeed, the ALJ thoroughly discussed the medical and educational records, and his opinion is supported by substantial evidence. (Tr. at 31-33.)

## B. Remaining Findings and Conclusions

After careful review of the record, the court affirms the remainder of the ALJ's decision as it is supported by substantial evidence.

## VII. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the decision of the Commissioner is **AFFIRMED** and Webb's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this

---

[5] The GAF Scale "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 n.1 (2d Cir. 2004). A score between fifty-one and sixty indicates moderate symptoms or moderate difficulty in school, work, and social functioning. *See Kohler*, 546 F.3d 260, 262 n.1 (2d Cir. 2008). A score between sixty-one and seventy reflects a person with "'[s]ome mild symptoms (e.g. depressed mood or mild insomnia) OR some difficulty in social, occupational, or school functioning . . . but [who is] generally functioning pretty well, has some meaningful interpersonal relationships.'" *Id.* at 262 (quoting Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., Text Rev. 2000)).

Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 27, 2014
Albany, New York

_____
Gary L. Sharpe
Chief Judge
U.S. District Court